# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

SINSAMOUTH TUREK,

          Plaintiff,

v.                              Case No. 8:21-cv-1146-VMC-TGW

KILOLO KIJAKAZI,
Acting Commissioner of
Social Security,[1]

          Defendant.

---

## REPORT AND RECOMMENDATION

       The plaintiff in this case seeks judicial review of the denial of her claims for Social Security disability benefits and supplemental security income payments.[2]  Because the decision of the Commissioner of Social Security fails to evaluate probative evidence of the plaintiff's mental

---

    [1]Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021, and should be substituted as the defendant.  See Fed. R. Civ. P. 25(d).

    [2]  This matter comes before the undersigned pursuant to the Standing Order of this court dated January 5, 1998.

functioning, the decision should be reversed and the matter remanded for further consideration.

I.

The plaintiff, who was forty-four years old at the time of the first administrative hearing and who has a ninth-grade education, has worked as an assembler of semi-conductors (Tr. 21, 37, 38). She filed claims for Social Security disability benefits and supplemental security income payments, alleging that she became disabled due to bipolar disorder, schizoaffective disorder, and a history of brain aneurysm (Tr. 85). The claims were denied initially and upon reconsideration.

The plaintiff, at her request, received a de novo hearing before an administrative law judge. She found that the plaintiff had severe impairments of obesity, lumbar spine degenerative disc disease, cerebral aneurysm, bipolar disorder, and schizoaffective disorder, but was not disabled (Tr. 152, 159). The plaintiff appealed the decision to the Appeals Council, who vacated the decision and remanded the matter for resolution of

several issues, including further discussion of the opinions of Gerard Boutin, Ph.D., the plaintiff's psychologist (see Tr. 166-168).

The plaintiff received a second de novo hearing before a different administrative law judge. The law judge found that the plaintiff had severe impairments of "disorders of the spine; cerebral aneurysm; obesity; schizophrenia; depressive disorder; bipolar disorder; and schizoaffective disorder" (Tr. 15). The law judge determined that, with those impairments, the plaintiff had the following residual functional capacity (Tr. 18):

> [She can] perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) and she can perform unskilled work with routine and repetitive tasks requiring no more than standard breaks, no public interaction, no frequent changes in the work setting, and occasional interaction with coworkers and supervisors.

The law judge concluded that the plaintiff was unable to perform any past relevant work (Tr. 21). However, based on the testimony of a vocational expert, the law judge determined that there are jobs that exist in significant numbers in the national economy that the plaintiff can perform, such as mail sorter, assembler, and produce sorter (Tr. 22). Consequently,

3

the law judge found that the plaintiff was not disabled (Tr. 23). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner of Social Security.

## II.

In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the

evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

### III.

The plaintiff underwent psychotherapy with Dr. Gerard Boutin from January 2019 until August 2020. Dr. Boutin completed three mental impairment Questionnaires on the plaintiff's behalf in April 2019, November 2019, and September 2020. He opined that, due to schizophrenia and a cerebral aneurysm, the plaintiff had marked limitations in all four broad areas of mental functioning, known as the "paragraph B" criteria. 20 C.F.R. 404.1520a(c)(3) (see e.g., Tr. 905-08).[2] He opined further that she would be

---

2 The four broad areas are: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. 404.1520a(c)(3). It is noted that Dr. Boutin opined in the September 2020 Questionnaire that the plaintiff's limitations in these areas were moderate-to-extreme (Tr. 1097). For simplicity, only Dr. Boutin's opinions of marked limitations are mentioned in this recommendation.

absent from work more than three days monthly (Tr. 907). Dr. Boutin attributed these limitations to the plaintiff's disorganized thinking, memory loss, abstract reasoning problems, attention and concentration deficits, and aphasia (id.).

The law judge found that the Questionnaire responses were "unpersuasive[,]" reasoning that they are "not supported by or consistent with the medical evidence of record" (Tr. 20). The plaintiff argues that this conclusion is not supported by substantial evidence because the law judge failed to evaluate probative medical evidence supporting Dr. Boutin's opinions. Specifically, the decision does not mention, much less evaluate, the results of psychological tests administered by Dr. Boutin. Furthermore, the law judge did not explain how she evaluated the results of the plaintiff's Mental Status Examinations (MSEs) conducted by Dr. Boutin.

In February 2019, Dr. Boutin administered to the plaintiff a battery of psychological tests. The plaintiff's result on the Wechsler Adult Intelligence Scale IV (WAIS-IV) was a full scale IQ score of 65, which is in the intellectually deficient range (Tr. 968). The plaintiff's score on the

Working Memory Index of the WAIS-IV was 66, which is also within the intellectually deficient range (Tr. 969). In this regard, Dr. Boutin opined that the plaintiff "should be expected to have poorly developed working memory skills," "poor attention to task," [and] "poor cognitive and executive skills to facilitate retention" (id.). Furthermore, the plaintiff's neurological test results were consistent with "diffuse neurocognitive dysfunction," and her Personality Assessment Inventory showed that the plaintiff's thought processes were marked by confusion, distractability, and difficulty concentrating (Tr. 970-71).

As the plaintiff correctly argues, the law judge did not mention, or evaluate, any of these test results (Doc. 21, p. 18). This is reversible error.

It is well-established in the Eleventh Circuit that a law judge must state the weight given to each item of impairment evidence and provide reasons for that assessment. Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986); see also Simon v. Commissioner, Social Security Administration, 7 F.4th 1094, 1104–05 (11th Cir. 2021). Thus, while the law judge is not required to discuss every piece of record evidence, Dyer v. Barnhart, 395

8

F.3d 1206, 1211 (11th Cir. 2005), she must sufficiently explain the weight given to "obviously probative exhibits." Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981).

> As the Eleventh Circuit explained:
>
> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight [s]he has given to obviously probative exhibits, to say that h[er] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Id. (emphasis added; quotation marks and citation omitted).

Thus, what is required is that the law judge explain what she concluded about this evidence and why she reached that decision. See id. In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence. Cowart v. Schweiker, supra, 662 F.2d at 735.

9

Here, the law judge's decision leaves me to guess how she evaluated the plaintiff's psychological test results, which arguably support Dr. Boutin's opinions that the plaintiff was markedly limited in one or more of the paragraph B areas of mental functioning and/or would be excessively absent from work. Consequently, the law judge must expressly evaluate that evidence so that the court can meaningfully review whether the law judge's determination is supported by substantial evidence. See Carter v. Colvin, 569 Fed. Appx. 687, 689 (11th Cir. 2014) ("Although the ALJ's explanation of the decision need not account for every piece of evidence ... it must sufficiently explain the weight given to 'obviously probative' evidence.").

Furthermore, the plaintiff persuasively argues that this deficiency is compounded by the law judge's failure to explain how she evaluated the plaintiff's MSEs by Dr. Boutin. The plaintiff had 45-minute psychotherapy sessions with Dr. Boutin, mostly on a monthly basis, from October 2019 to August 2020. The great majority of those MSEs show (see, e.g., Tr. 1080):

> .... She is well oriented in all spheres. Regarding
> level of consciousness, she appears [to have]

10

fluctuating alertness.   Affect is flat.   Mood is depressed and anxious.  She presented herself in an inappropriate fashion. Eye contact can be described as fair. Her speech is disorganized. Recent memory appears moderately impaired. Remote memory is mildly impaired. Psychomotor activity can be characterized by psychomotor retardation.            Regarding           conceptual disorganization, none is evident.   Her thought content is characterized by no significant preoccupations.         Regarding       perceptual functioning, the patient denies hallucinations and none are evident since she has been on her medications.      Attitude can be described as cooperative and interested.  As far as insight is concerned, the patient verbalizes partial awareness of        problems.        Judgment      is      poor. Attention/Concentration is characterized by distractability.   Regarding impulse control the patient shows poor frustration tolerance.  Sleep: difficulty falling asleep, sleeps too much and early morning    awakening.      Energy:   decreased. Appetite: overeats.

None of these abnormalities is mentioned in the decision.  Rather, the law judge stated, in a cursory manner, that the MSEs showed "some abnormalities" (Tr. 20).

Considering the significance of Dr. Boutin's clinical findings, such as fluctuating alertness, distractability affecting attention and

11

concentration, retarded psychomotor activity, inappropriate presentation, disorganized speech, and "poor frustration tolerance," more than a vague mention that the MSEs showed "some abnormalities" is required.   See Walker v. Bowen, 826 F.2d 996, 1001 (11th Cir. 1987) ("it is the duty of the ... [ALJ] to make specific and well-articulated findings as to the effect of the combination of impairments").

In sum, because the law judge did not adequately evaluate the objective test findings by Dr. Boutin or the abnormalities identified by Dr. Boutin in the plaintiff's MSEs, the court cannot conclude that substantial evidence supports the law judge's decision to discount Dr. Boutin's opinions on the basis that they are not supported by the medical record.   Hudson v. Heckler, 755 F.2d 781, 786 (11th Cir. 1985).[3]

---

3 The law judge also found that the plaintiff's activities of daily living were not limited to the extent one would expect given her symptoms (Tr. 20).  In this regard, the law judge mentions that the plaintiff independently bathes and grooms, takes her medication, prepares meals, does laundry, and shops in stores (id.).  It is noted, however, that the Function Reports and the Report of Contact specify that the plaintiff needs reminders to do personal care and take medication, she requires assistance with household chores, and that she no longer drives because she gets lost (Tr. 398, 409).  Additionally, the Social Security Representative who spoke with the plaintiff "note[d] that the [plaintiff] needed re-assurance from her third party when answering questions.  She appeared to be medicated as she was talking slow and seemed little confused" (Tr. 398).

Therefore, it is appropriate to remand this matter for further proceedings. See Dempsey v. Commissioner of Social Security, 454 Fed. Appx. 729, 732 (11th Cir. 2011) (quotation marks and citation omitted) ("[W]hen the ALJ fails to state with sufficient clarity the grounds for his evidentiary decisions, we will not affirm simply because some rationale might have supported the ALJ's conclusion, and instead remand for further findings at the administrative hearing level.").

The Commissioner asserts several arguments in her opposition memorandum, none of which is meritorious, or address the law judge's failure to evaluate the plaintiff's objective test results (see Doc. 22).

Rather, the Commissioner argues first that substantial evidence supports her determination, and she identifies evidence favorable to the decision (see id., pp. 6-7, 9). This contention is unavailing because, when determining whether substantial evidence exists, the court must take into account evidence that is unfavorable, as well as favorable, to the decision. See Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).

13

The Commissioner also seeks to discount as unpersuasive Dr. Boutin's opinions in three mental impairment Questionnaires as not supported by, or consistent with, the medical evidence of record (Doc. 22, p. 9). However, this statement by the law judge is too conclusory because the court is left to guess how the law judge evaluated this medical evidence from Dr. Boutin. See Cowart v. Schweiker, supra, 662 F.2d at 735.

The Commissioner contends further that the plaintiff's "emphasis on Dr. Boutin's documentation of her symptoms, mental status examination findings, and prognosis on the forms misses the mark, as such notations are not medical opinions under the applicable regulations" (Doc. 22, p. 14). This contention fails because the law judge is required to evaluate probative medical evidence, whether or not it is a medical opinion. See Cowart v. Schweiker, supra, 662 F.2d at 735.

Additionally, the Commissioner argues that a treating doctor's medical opinions are not entitled to deference or greater evidentiary weight (Doc. 22, p. 7). That obsolete principle was not applied here. The law judge is only required to explain her assessment of this evidence, which appears

14

unfavorable to her decision. Thus, on remand, Dr. Boutin's opinions are not entitled to deference, and they can be rejected, as long as there is an adequate explanation for that determination.

Finally, the Commissioner contends that the law judge's purported failure to assess this evidence is harmless error (id.). The defendant argues that the meanings of "marked" and "extreme" are not defined in the Questionnaires completed by Dr. Boutin (id.). Consequently, the Commissioner argues, it is "mere speculation Dr. Boutin's checkmarks might equate to limitations beyond the RFC finding" (id.). This argument is meritless.

Thus, the law judge did not give that reason for rejecting Dr. Boutin's opinions. Therefore, the Commissioner's argument that the Questionnaire's rating system is too vague is an improper post hoc rationalization. See Motor Vehicle Manufacturers Association of the United States, Inc. v. State Farm Mutual Automobile Insurance Co., 463 U.S. 29, 50 (1983); Baker v. Commissioner of Social Security, 384 Fed. Appx. 893, 896 (11th Cir. 2010).

In all events, the contention is unpersuasive.  Thus, the law judge clearly considered Dr. Boutin's opinions more restrictive than her determination of the plaintiff's RFC, as she stated that Dr. Boutin's opinions were not supported by, or consistent with, the overall record.

Furthermore, Dr. Boutin opined that the plaintiff was not capable of employment. Therefore, it is apparent that, in opining the plaintiff had marked limitations, Dr. Boutin meant that the plaintiff's mental impairments caused disabling functional limitations.  Furthermore, that is consistent with social security law's definition of "marked." See 20 C.F.R. Pt 404, Subpt P, 12.00(F)(d) (emphasis added) (marked limitation means "[y]our functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.").

In sum, the law judge failed to evaluate properly probative medical evidence.  Furthermore, this is not a harmless error, because that evidence arguably supports Dr. Boutin's opinions of marked limitations in at least one of the four areas of mental functioning.  Therefore, absent an explanation from the law judge as to how she treated this evidence—beyond

the conclusory statement that it is unsupported by the record—it cannot be stated that the decision is supported by substantial evidence. See Cowart v. Schweiker, supra, 662 F.2d at 735; Simon v. Commissioner, Social Security Administration, supra, 7 F.4th at 1104–05.

IV.

For these reasons, I recommend that the decision of the Commissioner be reversed and the matter remanded for further consideration.

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: AUGUST 18, 2022

NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1